Judge Steven L. Ohn

Judge Frank J. Santoro

13-74013

NORFOLK DIVISION

FILED

JUL 2 8 2015

CLERK
U.S. BANKRUPTCY COURT

July 28, 2015

According to United States
code, Title 15, Section 1639A,
and Title 15, Section 1692E,
the bank has violated
the law and does not
have title to this property

The bank owes us
a refund which is enough
to pay off the bankruptcy.

So continue the bankruptcy
until we receive the refund

to pay off the
bankruptcy.

Respectfully,

~: Richard-E: Russell
~: Denese-I: Russell



FOR THE FEDERAL-POSTAL-COURT FILING BY THE CLERK~MAIL-REGISTERED-NUMBER:
~RA286254645US
DATE-~4~MAY~2015
TIME-~9~o'clock and: ____ minutes: A M
____ , Clerk-Of-The-Court.

:David~Wynn~Miller.

:Richard

:Denese-I.: Russell

:BONDED: c.-s.-.s.-c.-.p.-.s.-g.-DOCUMENT-CONTRACT-FEDERAL-POSTAL-STATION-COURT-VENUE-FLAG.

In the **DOCUMENT-CONTRACT-FEDERAL-POSTAL-STATION-COURT-VENUE** of this **C.-S.-S.-C.-P.-S.-G.-DOCUMENT-CONTRACT-QUO-WARRANTO-COMPLAINT, C.-S.-S.-C.-P.-S.-G.-LIS-PENDENS-DOCUMENT-CLAIM &: 'C.-S.-S.-C.-P.-S.-G.-WRIT of the DOCUMENT-CONTRACT-FAULT-CLAIM'** ARE with the **C.-S.-S.-C.-P.-S.-G.-FEDERAL-POSTAL-REGISTRATION-DOCKETING-CORPORATION-CASE-NUMBER-~RA286254645US.**

**: Richard-E.: Russell &: Denese-I.: Russell**[~1413-GLENWOOD-LINKS-LANE,-~VIRGINIA-BEACH,-~VIRGINIA-~23464-8696]
: David-Wynn: Miller,: FEDERAL-POSTAL-JUDGE, For this FEDERAL-POSTAL-JUDGE'S-KNOWLEDGE of the QUALIFICATIONS &: CERTIFICATIONS ARE with these C.-S.-S.-C.-P.-S.-G.-CORRECTIONS of the FRAUD-PARSE-SYNTAX-GRAMMAR.
**:CLAIMANTS:    :CONTEST-~VS.:**
CITIBANK, N.A.[~1000-TECHNOLOGY-DRIVE,-~O'FALLON,-MISSOURI-~63368-2340]
**[TRUSTEE]=GLASSER &GLASSER-P.L.C.** [~580-EAST-MAIN-STREET,-~SUITE~600,-~NORFOLK,-~VIRGINIA-~23510]
**:VASSALEES:**

FOR this **C.-S.-S.-C.-P.-S.-G.** of the CLAIMANTS ARE with this QUO-WARRANTO-COMPLAINT-CORRECTION by the VASSALEE'S-FRAUDULENT-PARSE-SYNTAX-GRAMMAR-EVIDENCE.
FOR the **Richard-E.: Russell &: Denese-I.: Russell's**-CARETAKER-TRUSTEE-WAGES-CLAIMS of the **$629,000.00,** ARE with the ONE-HUNDRED-EIGHTY-SEVEN-WEEKS with the LAND &: BUILDINGS-LOCATION-~1413-GLENWOOD-LINKS-LANE,-~VIRGINIA-BEACH,-~VIRGINIA-~23464-8696, with the CLAIMANTS'-LABOR-GUARDIAN-CARETAKER-TRUSTEE-WAGES-START-DATE-~14-~OCTOBER-~2011

---

For the **WORD-TERMS** of this **C.-S.-S.-C.-P.-S.-G.-NOW-TIME- D.-C.-F.-P.-S.-C.-V.** ARE WITH THIS CLAIM BY THIS VESSEL-PAPER-DOCUMENT:
: DOCUMENT-CONTRACT-FEDERAL-POSTAL-STATION-COURT-VENUE = D.-C.-F.-P.-S.-C.-V.
: VASSALEE-(WORD-MEANING) VASSAL=SERVANT of this DOCUMENT, EE=PLOYEE of this DOCUMENT.
: C.-S.-S.-C.-P.-S.-G. =: CORRECT-SENTENCE-STRUCTURE-COMMUNICATION-PARSE-SYNTAX-GRAMMAR.
: D.-C.-C. =: DOCUMENT-CONTRACT-CLAIM.
: D.-C.-C.-S. =: **DOCUMENT-CONTRACT-CLAIMS-SECTION.** For this PARSE-SYNTAX-GRAMMAR-COMMUNICATION-WORD-CORRECTIONS ARE with the CORRECTION-CLAIM of the FRAUDULENT-FEDERAL-TITLES-USE of the FRAUDULENT-PARSE-SYNTAX-GRAMMAR &: FEDERAL-CODES-USE by the C.-S.-S.-C.-P.-S.-G.-NOW-TIME-D.-C.-F.-P.-S.-C.-V.
: **DOCUMENT-VESSEL** = For the D.-C.-F.-P.-S.-C.-V.-CLERK-DOCKETING of the D.-C.-F.-P.-S.-C.-V.-PAPERS ARE with the CORPORATION-CLAIM BETWEEN the TWO-OR-MORE-PERSONS with the D.-C.-F.-P.-S.-C.-V.-PORTING-STAMP by the D.-C.-F.-P.-S.-C.-V.-CLERK.
: **DOCUMENT-VESSEL, DOCUMENT-VENUE, AND DOCUMENT-COURT:** = For the CORPORATION of the TWO-OR-MORE-PERSONS ARE with the PORTING-CLAIM with the D.-C.-F.-P.-S.-C.-V.-PORT-CLERK by this DOCUMENT-CONTRACT-PARSE-SYNTAX-GRAMMAR.
: CONJUNCTION: &: and: = ALSO, COMMAND;    or: = OPTION, EITHER.
: **FRAUDULENT** =: FICTION, MODIFICATION, PERJURY, GUESSING, OPINION, *PRESUMPTION, ASSUMPTION*, ILLUSION, FRAUD, MISLEADING.
: LODIAL = [ARTICLE] For the SPECIFIC = A, AN, THE, THIS, THESE, THROUGH.
: POSITION = FOR, OF, WITH, BY, IN, AS, ON, WITHIN, WITHON, AGAINST. For the POSITIONAL-LODIAL-FACT-PHRASE of the CORRECT-SYNTAX-GRAMMAR-PHRASE ARE with the COMMUNICATION-CLAIM of the FACTS.
: **VASSALEE** = For the VASSAL=SERVANT; EE=EMPLOYEE of this COMPLAINT-DOCUMENT.
: VOLITION = PERSON'S-KNOWLEDGE of the FACTS ARE with the MOTION-THINKING-CLAIM by the C.-S.-S.-C.-P.-S.-G.
: PARSE-SYNTAX-GRAMMAR: For the WORD-MEANINGS of the WORD-PLACMENT ARE within the C.-S.-S.-C.-P.-S.-G. by the CORRECT-WORD-MEANINGS THROUGH the QUANTUM-MATH-PARSE-SYNTAX-GRAMMAR-TECHNOLOGIES FRONTWARDS &: BACKWARDS.
:**REAL** =: RE=NO, AL=CONTRACT; "PARSE-TRANSLATION", For an English-Parse-Syntax-Grammar since the English-language-started AREbeen fraudulent-modification by an adverb-verb, adverb-adjective-pronoun, pronoun-adverb-adjective-pronoun, &pronoun-adverb-verb-syntax-fiction.
: **VERB-SYNTAX: IS**=SINGULAR-SYNTAX-TENSE, **ARE**=PLURAL-SYNTAX-TENSE, **THINKING-MOTION.**

For the COPYCLAIM/COPYRIGHT-~4-~MAY-~2015 by the David-Wynn: Miller, FEDERAL-POSTAL-JUDGE, POST-MASTER, of this DOCUMENT-CONTRACT-FEDERAL-POSTAL-STATION-COURT-VENUE &: CORPORATION-CASE-REGISTERED-MAIL-NUMBER-~RA289254645US.    ~1

:Richard-E.: Russell
:Denese-I.: Russell

~A For this STATEMENT of this FEDERAL-POSTAL-JUDGE'S-CONTRACT ARE with the C.-S.-S.-C.-P.-S.-G.-AUTHORITY-CLAIM of this D.-C.-F.-P.-S.-C.-V.-WORD-TERMS with the 'C.-S.-S.-C.-P.-S.-G.-LAW of the FLAG' with the JOINING-VENUE with the 'FEDERAL-POSTAL-TREATY-POSTING-LOCATION'(WWW.DWMLC.COM) of the 'UNITED-STATES-POSTAL-SERVICE-POSTING', UNITED-STATE-BANKING-TREATY-POSTING', 'DEPARTMENT of the JUSTICE-POSTING' &: 'SUPREME-COURT-CONTRACT-POSTING' with an UNITED STATES of an AMERICA-CORPORATION-~2-~FEBRUARY-~2001,"THRU-NOW-TIME.
~B For the TITLE-~28: D.-C.-C.-S.-~1331, of the D.-C.-F.-P.-S.-C.-V.-CLERK'S-DUTIES ARE with the C.-S.-S.-C.-P.-S.-G.-DOCKING-PAPER-VESSEL-VENUE-TITLE-NAME: D.-C.-F.-P.-S.-C.-V. of the NOW-TIME-C.-S.-S.-C.-P.-S.-G.-QUO-WARRANTO-COMPLAINT-CLAIM with the FEDERAL-POSTAL-REGISTERED-MAIL-CORPORATION-CASE-~RA286254645US.
[C.-S.-S.-C.-P.-S.-G. of the D.-C.-F.-P.-S.-C.-V.-RULE-~17: "RADIFICATION of the COMMENDMENT"-1999].
~C For the C.-S.-S.-C.-P.-S.-G.-AUTHORITY: TITLE-~28: D.-C.-C.-S.-~1361, of the D.-C.-F.-P.-S.-C.-V.-FEDERAL-POSTAL-SEAL ARE with the TWENTY-ONE-DAY-CORRESPONDENCE-BACK &: THREE-DAY-RESCISSION: TITLE-~15: D.-C.-C.-S.-~1635-~A, by the FEDERAL-POSTAL-COURT-VENUE-LOCATION-~5166,-NORTH-~63rd-STREET,-~MILWAUKEE,-~WISCONSIN~53218.
~D For the FAILURE of the VASSALEES'-C.-S.-S.-C.-P.-S.-G.-CORRESPONDENCE-BACK ARE with the WRIT of the DOCUMENT-CONTRACT-FAULT-CLAIM with the FOURTY-FIVE-DAYS-TRUST-TIME-LIMIT &: THREE-DAY-RESCISSION: TITLE-~15: D.-C.-C.-S.-~1635-A, by this D.-C.-F.-P.-S.-C.-V.-CONTRACT-AUTHORITY-HEREIN-CORRESPONDENCE-DOCUMENT.
~E For these CONSTITUTIONAL-DOCUMENT-TERMS of the D.-C.-F.-P.-S.-C.-V.-RULES ARE within these C.-S.-S.-C.-P.-S.-G.-NOW-TIME-TERMS of the D.-C.-F.-P.-S.-C.-V.-QUO-WARRANTO-COMPLAINT, LIS-PENDENS, &: WRIT of the DOCUMENT-CONTRACT-FAULT-CLAIM with the FAIRNESS-EQUALITY by these DOCUMENT-CLAIMS.
:DOCUMENT-CLAIM-~1, For the C.-S.-S.-C.-P.-S.-G. COMMUNICATION-FACTS of the CONTEST ARE with the FACT-AS-FACT-CLAIMS of the C.-S.-S.-C.-P.-S.-G. with the D.-C.-F.-P.-S.-C.-V.-CONTRACT-AUTHORITY-HEREIN-CORRESPONDENCE.
:DOCUMENT-CLAIM-~2, For the JUDGE'S-WRITTEN-CONTRACT of the FACTS ARE with the C.-S.-S.-C.-P.-S.-G.-CLAIMS of the NOW-TIME-CONTINUANCE with the CORRECT-EVIDENCE-CLOSURE-CORRECTIONS of the WRONG-WORD-MEANING-EVIDENCE with the SENTENCE-STRUCTURE-VIOLATIONS-CLAIMS of the TITLE-~18: D.-C.-C.-S.-~1001: FRAUDULENT-PARSE-SYNTAX-GRAMMAR-COMMUNICATION &: TITLE-~15: D.-C.-C.-S.-~1692-~E, with the FRAUD-WRITINGS &: MISLEADING-STATEMENTS with the PENALTY-FINES: TITLE-~15: D.-C.-C.-S.-~78-~ff, by the WRONGDOER'-WRITTEN-CONFESSION.
:DOCUMENT-CLAIM-~3, For the PERSONS'-C.-S.-S.-C.-P.-S.-G.-KNOWLEDGE of the CORRECT-FACTS ARE with the FAIRNESS-EQUALITY-CLAIMS of the SPEECH, WRITINGS, FAITHS, PRESS, DOCUMENT-PORTING with the C.-S.-S.-C.-P.-S.-G.-CONTRACT-GRIEVANCES by the D.-C.-F.-P.-S.-C.-V.
:DOCUMENT-CLAIM-~4, For the CORPORATION-CASE of the D.-C.-F.-P.-S.-C.-V. ARE with the C.-S.-S.-C.-P.-S.-G.-CLAIMS by the PERSON'S-FAIRNESS-EQUALITY-VOLITION.
:DOCUMENT-CLAIM-~5, For the PERSON'S-KNOWLEDGE OF THE DOCKETING &: FILING ARE WITH THIS D.-C.-F.-P.-S.-C.-V.-CLERK-CLAIM of the QUO-WARRANTO-COMPLAINT with the FOURTY-FIVE-DAY-TRUST-LAW'S-WRIT of the DOCUMENT-CONTRACT-FAULT-CLAIM with the TWENTY-ONE-DAY-CORRESPONDENCE-BACK to the D.-C.-F.-P.-S.-C.-V.-CLERK'S-DOCK with the C.-S.-S.-C.-P.-S.-G.-CORRESPONDENCE of the VASSALEES with the THREE-DAY-GRACE-RECISSION-TIME-LIMIT-PERIOD &: TWENTY-ONE-DAY-CORRESPONDENCE-BACK with the C.-S.-S.-C.-P.-S.-G.-JUDGE'S-OATH-ORRESPONDENCE.
:DOCUMENT-CLAIM-~6, For the CLAIM of the C.-S.-S.-C.-P.-S.-G.-CAPTURE-WARRANT or: C.-S.-S.-C.-P.-S.-G.-SEARCH-WARRANT ARE with the JUDGE'S-AUTOGRAPHED-C.-S.-S.-C.-P.-S.-G.-OATH by the C.-S.-S.-C.-P.-S.-G.-AUTHORITY-DUTY.
:DOCUMENT-CLAIM-~7, For the WITNESSING-PERSON of the WITNESS'S-TESTIMONY ARE with the PERSON'S-C.-S.-S.-C.-P.-S.-G.-KNOWLEDGE-CLAIM by the PERSONAL-SELF-CLAIMS.
:DOCUMENT-CLAIM-~8, For the CLAIMANTS'-KNOWLEDGE of the C.-S.-S.-C.-P.-S.-G.-FACTS ARE with the CLAIMANTS'-CLAIM of the CORRECT-NOW-TIME-EVIDENCE-FACTS.
:DOCUMENT-CLAIM-~9, For the C.-S.-S.-C.-P.-S.-G.-TWELVE-PERSON-KNOWLEDGE by the C.-S.-S.-C.-P.-S.-G.-CLAIMS ARE with the C.-S.-S.-C.-P.-S.-G.-TRIAL by the SAME-LEVEL-PLANE-D.-C.-F.-P.-S.-C.-V.: DOCUMENT-CLAIM-~10, For the TERMS of the CONVICTION-PERSON'S-PUNISHMENT ARE with the C.-S.-S.-C.-P.-S.-G.-CLAIMS of the BAIL-CONDITIONAL-TERMS, FINANCIAL-TERM-FINES or: JAILING-TERMS with the D.-C.-F.-P.-S.-C.-V.
: DOCUMENT-CLAIM-~11, For the D.-C.-F.-P.-S.-C.-V.-FIDUCIARIES of the DOCUMENT-CONTRACT-FACTS ARE with the DUTY-CLAIM or: ELECTION-CLAIM by the C.-S.-S.-C.-P.-S.-G.-OATH of the D.-C.-F.-P.-S.-C.-V.
: DOCUMENT-CLAIM-~12, For the VESSEL-DOCUMENT of the DOCUMENT-CONTRACT-HEREIN ARE with the VOLITION-CLOSURE-CLAIM of the DOCUMENT-CONSTITUTION, and DOCUMENT-CONTRACT-CORPORATION &: TRUST-DOCUMENTS.

For the COPYCLAIM/COPYRIGHT-~4-~MAY-~2015 by the David-Wynn: Miller, FEDERAL-POSTAL-JUDGE, POST-MASTER, of this DOCUMENT-CONTRACT-FEDERAL-POSTAL-STATION-COURT-VENUE &: CORPORATION-CASE-REGISTERED-MAIL-NUMBER-~RA289254645US.    –2

For the **C.-S.-S.-C.-P.-S.-G.-CAUSES** by the **QUO-WARRANTO-COMPLAINT-DOCUMENT-CONTRACT:**

**~1** For the CLAIMANTS'-KNOWLEDGE of the VASSALEES'-EVIDENCE **ARE** with the **VOID-CHAIN** of the **C.-S.-S.-C.-P.-S.-G.-LAND &: BUILDING-TITLE-CLAIM** of the STOPPING-FRAUDULENT-PARSE-SYNTAX-GRAMMAR-COMMUNICATION-DOCUMENT-EVIDENCE with the FOUR-TIMES-CASH-DAMAGES of the **CLAYTON-ACT(1914): TITLE-~15: D.-C.-C.-S.-~1639-~A**, with the D.-C.-F.-P.-S.-C.-V.-AUTHORITY by this QUO-WARRANTO-COMPLAINT-CONTRACT.

**~2** For the PARSE-SYNTAX-GRAMMAR-COMMUNICATION-ONE-THOUGHT-SENTENCE **&:** ONE-AUTHORITY-VENUE of the ONE-NOW-TIME **ARE** with the COMMAND-CLAIMS by the **D.-C.-F.-P.-S.-C.-V.-JUDGE'S-AUTHORITY.**

**~3** For the CLAIMANTS'-KNOWLEDGE of the **C.-S.-S.-C.-P.-S.-G.-CLOSURE-PORTING: D.-C.-C.-~26-~e**, of the **D.-C.-C.-~60-~b: CLOSURE-EVIDENCE ARE** with an AUTHORITY-CLAIM: **TITLE-~42: D.-C.-C.-S.-~1986**, with the C.-S.-S.-C.-P.-S.-G.-KNOWLEDGE against the FRAUDULENT-PARSE-SYNTAX-GRAMMAR-DAMAGE by the VASSALEES'-EVIDENCE-DOCUMENTS.

**~4** For the **Richard-E.: Russell &: Denese-I.: Russell's-KNOWLEDGE** of the FACTS **ARE** with the LABOR-WAGES-LOSS-CLAIM of the GUARDIAN-CARETAKER-TRUSTEE-CASH-WAGES-DUE: **$629,000.00**, with the **BUILDING &: LAND-LOCATION-~1413-GLENWOOD-LINKS-LANE,-~VIRGINIA-BEACH,-~VIRGINIA-~23464-8696**, with the **START-TIME-DATE-~14-~OCTOBER-~2011,** with the NOW-TIME-GUARDIAN-TRUSTEE-CARETAKER-UPKEEP **&** with the PAYMENT-NOW-DUE-TRUSTEE-EMPLOYEES'-CASH-WAGES of the TWENTY-FOUR-HOURS-PER-DAY-EVERYDAY-TRUSTEE-GUARDIAN-CARETAKER-DUTY with the **~VIRGINIA-STATE-LABOR-WAGE-RATE** by the **CLAIMANTS: Richard-E.: Russell &: Denese-I.: Russell.**

**~5** For the SECURITY of the C.-S.-S.-C.-P.-S.-G.-FACTS **ARE** with the CASH-CLAIMS of the **CORPORATION-CASE-NUMBER-~RA286254645US** with the **POSTAL-AUTHORITY-VENUE** by the **D.-C.-F.-P.-S.-C.-V.**

**~6** For the **FEDERAL-POSTAL-JUDGE:** David-Wynn: Miller's-KNOWLEDGE of the C.-S.-S.-C.-P.-S.-G.-EVIDENCE-FACTS **ARE** with the CORRECT-VOLITION-CLAIMS of the SUMMARY-CORRECTION-AUTHORITY: **TITLE-~42: D.-C.-C.-S.-~1986**, with the STOPPING-WRONG-PARSE-SYNTAX-GRAMMAR by the CLAIMANTS'-BONDED-VASSALEE'S-WRITTEN-EVIDENCE.

**~7** For the **C.-S.-S.-C.-P.-S.-G.-CLAIMANTS'-SALVAGE-CLAIM: TITLE-~46: D.-C.-C.-S.-~781**, of the **LAND &: BUILDING-~1413-GLENWOOD-LINKS-LANE,-~VIRGINIA-BEACH,-~VIRGINIA-~23464-8696, ARE** with an AUTHORITY-VENUE-CLAIM of the D.-C.-F.-P.-S.-C.-V. with the VOID-COMMUNICATION-CLOSURE-EVIDENCE of the VASSALEES'-'DEED OF TRUST'.

**~8** For the VASSALEE'S-WRITTEN-EVIDENCE by the FRAUDULENT-PARSE-SYNTAX-GRAMMAR-FEDERAL-HOUSING-AUTHORITY **ARE** with the PHYSICAL-EVIDENCE-DAMAGE-CLAIMS: **TITLE-~15: D.-C.-C.-S.-~1692-E**, FRAUD &: MISLEADING-STATEMENT-DOCUMENTS of the VASSALEES'-TAKING with the **Richard-E.: Russell & Denese-I.: Russell.**

**~9** For the VOID-CLOSURE of the VASSALEE'S-WRONG-WORD-MEANINGS with the SENTENCE-STRUCTURES **ARE** with the VIOLATIONS-CLAIMS of the **TITLE-~18: D.-C.-C.-S.-~1001**: FRAUDULENT-SYNTAX-COMMUNICATION-GRAMMAR **&: TITLE-~15: D.-C.-C.-S.-~1692-~E**, with the FALSE-WRITINGS **&:** MISLEADING-STATEMENTS with the **FRAUD-PENALTY-FINES: TITLE-~15: D.-C.-C.-S.-~78-~ff,**($25-MILLION-DOLLARS) by the VASSALEES.

**~10** For the **Richard-E.: Russell &: Denese-I.: Russell's-KNOWLEDGE** of the TRUSTEE-GUARDIAN-CARETAKER'S-WORKING-CASH-WAGES with the MINIMUM-WAGE of the **~VIRGINIA-STATE-RATES ARE** with the '8700'-HOURS-PER-YEAR-CLAIM of the TIME-**DATE-~14-~OCTOBER-~2011**, THROUGH the CURRENT-DATE with this DOCUMENT-FILE-STAMP-CLOSURE of the GUARDIAN-TRUSTEE-CARETAKER-DUTIES with the VASSALEES-**'DEED OF TRUST'.**

**~11** For the NEGATIVE-WORD-VOLITIONS: (AB, NEGATIVE, NOT, DIS, RE, UN, IN, WITHOUT, NO,) **ARE** with the DAMAGE-CLAIM AS the MODIFICATIONS-VOLITION with the VACATING-CLAIMS of the CORRECT-CORRESPONDENCE with the VASSALEES **&:** CLAIMANTS of the **D.-C.-F.-P.-S.-C.-V.**

**~12** For the WORDS of an **ADVERB-SYNTAX-GRAMMAR-MODIFICATIONS ARE** with the USE of the SINGLE-[PRE]POSITION **OR:** SINGLE-LODIAL-[ARTICLE] with the VOID of the POSITIONAL-LODIAL-FACT-PHRASE with the **SINGLE-WORD-MODIFIER: A, AS, AT, AM, BECAUSE, BEFORE, BEGIN, BUT, BY, CAN, COME, COULD, DO, DOES, DOWN, FROM, GET, GIVE, HAS, HAS, HAVE, HOW, HOWEVER, HE, HER, HIS, IN, IT, JUST, KEEP, KEPT, MUCH, NO, NOT, OF, OUT, OVER, OWN, PUT, RE, SO, SHE, SHOULD, SOME, SUCH, THAT, THAN, THE, THEY, THEIR, THEM, THEN, TO, THIS, THOSE, THROUGH, THRU, THREW, UP, UNDER, USE, WANT, WAS, WE, WENT, WHEN, WHAT, WHERE, WITH, WITHOUT, WITHIN, WHO, WHOM, WOULD, YAH, YES, YOU, YOUR, YOURSELF** of the VERB-FICTION-FRAUDULENT-WORD-MEANING with the **PREFIX = FUTURE-TIME = 'TO', 'PRE' &: SUFFIX = PAST-TIME: ED, &: FROM** by the VOID-NOW-TIME.

**~13** For the FEDERAL-POSTAL-JUDGE AS the SAFEGUARDING-OVERSIGHT **ARE** with the DAMAGE-CLAIM of the COMMUNICATION-DISABILITY-KNOWLEDGE &/or: HANDICAPPING-COMMUNICATION-FRAUDS by the VASSALEES.

For the COPYCLAIM/COPYRIGHT-~4-~MAY-~2015 by the David-Wynn: Miller, FEDERAL-POSTAL-JUDGE, POST-MASTER, of this DOCUMENT-CONTRACT-FEDERAL-POSTAL-STATION-COURT-VENUE &: CORPORATION-CASE-REGISTERED-MAIL-NUMBER-~RA289254645US.   ~3

~14 For this **LIS-PENDENS-LIEN** of the HEREIN-WAGES ARE with the CASH-VALUE-CARETAKER-GUARDIAN-TRUSTEE'S-CLAIM by A CERTIFICATE-HOLDER'S-NOW-TIME-FILE-STAMP-DATE-~2014.

~15 For the CLAIMANTS'-KNOWLEDGE of the GOVERNMENTS'-CRIMINAL-MONEY-PAYMENTS(OUT) or: CRIMINAL-MONEY-CONSPIRACY-COLLECTION-CLAIMS **ARE** with the GOVERNMENTS'-DAMAGE-CLAIM of the WRONG-DOER'S-VASSALEES-FRAUDULENT-PARSE-SYNTAX-GRAMMAR AT the U.S.A.-TREASURY-BANK with the FRAUDULENT-BANKING-**'DEED OF TRUST'-PAPERS** of the ONE-PARTY-SIGNATURE **&:** FRAUD-SYNTAX-GRAMMAR-CLAIMS by the WRONGDOER-SERVICER-BANKER-VASSALEES.

~16 For the FRAUD-PARSE-SYNTAX-GRAMMAR-WRITTEN-EVIDENCE as the **'DEED OF TRUST' ARE** with the DAMAGE-CLAIM of the PERJURY, BANK-FRAUD, **&: 'DEED OF TRUST'-PAPERS** with the **TITLE-~15: D.-C.-C.-S.-~1692-~E,** of the FRAUD **&:** *MIS*LEADING-STATEMENT-CRIMINAL-PENALTIES: **TITLE-~15: D.-C.-C.-S.-~78-~ff,** [$25-MILLION-DOLLARS] by an ATTORNEY-GENERAL-FALSE-CLAIMS-ACT-TASK-FORCE.

~17 For the PARSE-SYNTAX-GRAMMAR-COMMUNICATION-WORD-OPERATIONS of the FRAUDULENT-SENTENCE-STRUCTURES **ARE** with the DOCUMENTED-BONDED-EVIDENCE-CLAIMS of the WRITTEN-PLEADINGS, NOTIONS, ORDERS(NO-CONTRACT), MOTIONS **&:** JUDGEMENTS(OPINIONS) by the VASSALEES.

~18 For an ORIGINAL-CLAIMS of the C.-S.-S.-C.-P.-S.-G.-FALSE-CLAIMS-ACT **ARE** with the CLAIMANTS'-CONTRACT-KNOWLEDGE of the DAMAGE-CLAIM with the VASSALEES'-FRAUDULENT-CONTRACT-PAYMENTS with the FRAUDULENT-GOVERNMENT-GUISE with the FALSE-CASH-TRANSFER-CLAIM of the TREASURY'S-PAYMENT-OUT with the FRAUDULENT-PARSE-SYNTAX-GRAMMAR-'DEED OF TRUST' by the TREASURY-BANKING-PORT or: *RESCISSION-ACT'S-POSTAL-TREASURY-PAYBACK* within the **SEVENTY-TWO-HOURS** of the FRACTION-BANKING-FINANCIAL-GAINS-TIMES-TEN with the PERFORMANCE-KNOWLEDGE of the FRAUDULENT-PARSE-SYNTAX-GRAMMAR-CORRESPONDENTS **&:** FRAUDULENT-PARSE-SYNTAX-GRAMMAR-STATEMENTS by the CLAIMING-BANK-PERSON with the PERSONS-CONSPIRING by the FRACTIONAL-CASH-AMOUNT-CREATED.

~19 For the **Richard-E.: Russell &: Denese-I.: Russell's-DAMAGES** by the VASSALEES'-FRAUDULENT-PARSE-SYNTAX-GRAMMAR-DOCUMENTS **ARE** with the VACATING-CLAIM of the FRAUDULENT-DOCUMENTS with the SANCTIONS against the VASSALEES as the DUTY-CARETAKER, TRUSTEE **&:** CUSTODIAN-PAYABLE-WAGES-START-TIME-DATE-~**14-~OCTOBER-~2011,** thru the NOW-TIME-GUARDIAN-UPKEEP-SECURITY-TRUSTEE-CARETAKER-~2015-~NOW-TIME-FILE-STAMP of the CASH-WAGES-DUE: **$1682.00,-PER-WEEK** with the **TOTAL-WAGES-DUE: $629,000.00.,** for the **Richard-E.: Russell &: Denese-I.: Russell's-**PERPETUAL-CONTINUANCE-CORPORATION-CASE-CLAIM: **TITLE-~11: D.-C.-C.-S.-~101.**

~20 For this FEDERAL-POSTAL-JUDGE: David-Wynn: Miller's-KNOWLEDGE of the **TITLE-~42: D.-C.-C.-S.-~1986, ARE** with the CORRECTION-CLAIM of the **PARSE-SYNTAX-GRAMMAR-COMMUNICATION-NUMBERING-KEY-CODED-WORDS: '1'=:ADVERB, '2'=:VERB, '3'=:ADJECTIVE, '4'=:PRONOUN,** within the FRAUDULENT-SYNTAX-GRAMMAR-**'DEED OF TRUST'-EVIDENCE** of the VASSALEES'-DOCUMENTS by the D.-C.-F.-P.-S.-C.-V.-CORPORATION-CASE.

~21 For the C.-S.-S.-C.-P.-S.-G.-FEDERAL-*ATTORNEY*-GENERAL-KNOWLEDGE of the D.-C.-F.-P.-S.-C.-V. **ARE** with the CASH-CLAIMS of the DOCUMENT-EVIDENCE-AUTHORITY-FILING with the THIRTY-FIVE-PERCENT-ROYALTY-SETTLEMENT-PORTION of the C.-S.-S.-C.-P.-S.-G.-FEDERAL-*ATTORNEY*-GENERAL-COVERY-CASH-DAMAGE-COLLECTIONS.

~22 For the FRAUDULENT-USES of the PREFIX-PARSE-WORDS **ARE** with the NEGATIVE-CLAIM of the **PREFIXES: A, AB, AC, AD, AF, AM, AN, AP, AR, AS, AT, DE, DIS, EM, EN, ES, EX, IM, IN, MAL, MIS, NE, NO, NON, NOR, OB, OC, OP, OF, PRE, PRO, PRI, PRU, RE, SI, SUB, TO, UN,** or: with the MODIFICATION-FACTS by an ADVERB or: ADJECTIVE-MODIFICATION of the **TITLE-~18: D.-C.-C.-S.-~1001,:** FRAUDULENT-PARSE-SYNTAX-GRAMMAR by the FEDERAL-POSTAL-JUDGE'S-KNOWLEDGE by THE C.-S.-S.-C.-P.-S.-G.-SUMMARY-COMMANDS.

~23 For the BREACH of this D.-C.-F.-P.-S.-C.-V.-CORPORATION-CASE **ARE** with the TITLE-~42: CHAPTER-~16: D.-C.-C.-S.-~12182,: BIAS **&:** HANDICAPPING-COMMUNICATIONS-DISABILITIES-ACT THROUGH the BREACHES of the **TITLE-~29: DOCUMENT-CONTRACT-CLAIMS, :CHAPTER-~16: SECTION-~701-~c-~2,** with the **TITLE-~42: D.-C.-C.-S.-~1983: NOTE-~349: POLICY, CUSTOM &: USAGE** of an EQUAL-PARSE-SYNTAX-GRAMMAR-COMMUNICATION-DUTY within the TITLE-~42: D.-C.-C.-S.-~1986: KNOWLEDGE **&:** CORRECTING of the WRONG-PARSE-SYNTAX-GRAMMAR by the D.-C.-F.-P.-S.-C.-V.

~24 For the HANDYCAPPING-VICTIM-PERSONS of the FRAUDULENT-PARSE-SYNTAX-GRAMMAR-**''DEED OF TRUST'' ARE** with the DISABILITY-ACT-VIOLATION-CLAIM of the HANDYCAPPING-CAUSE with the NOTION **&:** MOTION by THAT PERSON'S-CLOSURE-CONTEMPT, APARTHEID, BIAS, CONTRACT-TREASON and/or: RAPE with the FRAUDULENT-*UNITED STATES* COURT-"**J**UDGEMENT"=OPINION &/or: "ORDERS"-MEANS: NO-CONTRACT".

For the COPYCLAIM/COPYRIGHT-~4-~MAY-~2015 by the David-Wynn: Miller, FEDERAL-POSTAL-JUDGE, POST-MASTER, of this DOCUMENT-CONTRACT-FEDERAL-POSTAL-STATION-COURT-VENUE **&:** CORPORATION-CASE-REGISTERED-MAIL-NUMBER-~**RA289254645US.**        ~4

~25 For the CLAIMANTS'- C.-S.-S.-C.-P.-S.-G.-DOCUMENTS of the NOW-TIME-CLOSURE-FACTS **ARE** with the POSITIONAL-CODIAL-FACT-PHRASES, &: **ONE-VERB: IS=SINGLAR, &: ARE=PLURAL**, by the SINGLE-THINKING-VERB-CONTENT.

~26 For the **QUI-TAM** of the CONTRACT-DOCUMENT-CO-OPERATION **ARE** with the JOINING-CLAIM of the PARSE-SYNTAX-GRAMMAR-COMMUNICATION-OPERATIONS with the CONTRACT-DUTY: **TITLE-~42: D.-C.-C.-S.-~1986,** with the CLAIMANTS'-KNOWLEDGE of the STOPPING &: CORRECTING against the VASSALEES'-FRAUDULENT-PARSE-SYNTAX-GRAMMAR-EVIDENCE.

~27 For the C.-S.-S.-C.-P.-S.-G.-FALSE-CLAIMS-ACT of the CORPORATION-CASE **ARE** with an AMERICAN-LAW-CLAIM of the LIABILITY with the PERSONS &:/or: COMPANY of the FEDERAL-CONTRACTOR with the PORT-AUTHORITIES of the CORPORATION-FEDERAL-POSTAL-SERVICE with the VOLITION of the FRAUDULENT-PARSE-SYNTAX-GRAMMAR: **TITLE-~18: D.-C.-C.-S.-~1001, &: TITLE-~15: D.-C.-C.-S.-~1692-E: FRAUD &: *MIS*LEADING-SYNTAX-GRAMMAR-STATEMENTS, &:** MONEY-PENALTIES: **TITLE-~15: D.-C.-C.-S.-~78-~ff:**[$25-MILLION] **&:** BANKING-FRAUD-DOCUMENTS with the **TITLE-~18: D.-C.-C.-S.-~242:** BLOCKING-PUBLICATION-RIGHTS with the COLORING of the LAWS with the **TITLE-~42: D.-C.-C.-S.-~1985-~1: CIVIL-CONSPIRACY** by the PERSONS with the **TITLE-~42: D.-C.-C.-S.-~1985-~2:** BLOCKING-EVIDENCE **&:** WITNESSES by the **TITLE-~18: D.-C.-C.-S.-~1001:** FRAUDULENT-PARSE-SYNTAX-GRAMMAR-BONDED-**EVIDENCE** with the **TITLE-~42: D.-C.-C.-S.-~1985-~3:** BLOCKING-WITNESSES **&: EVIDENCE** by the **TITLE-~18: D.-C.-C.-S.-~1001:** FRAUDULENT-SYNTAX-GRAMMAR with the **RACKETEERING-TITLE-~18: D.-C.-C.-S.-~1961:,** with the **TITLE-~18: D.-C.-C.-S.-~3: PARTICIPATING-CRIME &:** CRIMINAL-VIOLATIONS **&: TITLE-~18: D.-C.-C.-S.-~4: MISPRISON** with the FELONY of the FRAUDULENT-VASSALEES'-DOCUMENTS-EVIDENCE within the **D.-C.-F.-P.-S.-C.-V.**

~28 For this **GOLD-CERTIFICATE** of this **LIS-PENDENS-CLAIM ARE** with this **GOLD-CERTIFICATE-VALUE-LIEN-CLAIM** of this **D.-C.-F.-P.-S.-C.-V.-CORPORATION-CASE-NUMBERS-~RA286254645US,** with the FINANCIAL-SECURITY-HOLDING-CLAIM of the **GUARDIAN-TRUSTEE-LOCATION-~1413-GLENWOOD-LINKS-LANE,-~VIRGINIA-BEACH,-~VIRGINIA-~23464-8696,** within this NOW-TIME-DATE of the **C.-S.-S.-C.-P.-S.-G.-WRIT of the DOCUMENT-CONTRACT-FAULT-CLAIM**.

~29 For the **Richard-E.: Russell &: Denese-I.: Russell's-CONTRACT** as the GOLD-CERTIFICATE-HOLDER **ARE** with the GOLD-CERTIFICATE-CLAIM of an AUTHORIZATION with an AUTOGRAPH-WRIT of the DOCUMENT-CONTRACT-FAULT-CLAIM by an AUTHORITY with the D.-C.-F.-P.-S.-C.-V.-FEDERAL-POSTAL-JUDGE'S-TIME-DATE of the C.-S.-S.-C.-P.-S.-G.-BORROWED-PERFORMANCE-VALUES.

~30 For the VIOLATIONS of the **TITLE-~18: D.-C.-C.-S.-~641, ARE** with the DAMAGE-CLAIMS of the FRAUDULENT-PARSE-SYNTAX-GRAMMAR-COMMUNICATION, MONETARY-WAGES, PAYMENT-WAGES, COMMERCE-WAGES or: CRIMINAL-ACTS with the *JU*STICE-*DE*PARTMENT'S-*PRO*TECTION-PARTICIPATION by the **FRAUDULENT-VOID-OATH-"D.O.J."-ATTORNEY'S** with the VASSALEE'S-FRAUDULENT-GRAMMAR-DOCUMENT-PLEADING-EVIDENCE.

~31 For the GOVERNMENTS'-POSSESSIONS of the CASH-MONEY-LOSS **ARE** with the CORRRECTION-CLAIM of the C.-S.-S.-C.-P.-S.-G.-CONTRACT-DOCUMENTATION with the QUI-TAM-LAWSUITS-CLAIM of the VASSALEES-DEFENDANT-AUTOGRAPH-VIOLATION-LIABILITIES, RECKLESS-VOLITION with the CORPORATION-CASE of the C.-S.-S.-C.-P.-S.-G.-FACTS with an EVIDENCE-STANDARD of the CONTRACTING-DUTY-ELEMENTS with the VIOLATORS-LOST-POSITION by the FOUR-TIMES-MONEY-DAMAGES **&:** CIVIL-FINES of the FALSE-CLAIM, FRAUD **&:** MISLEADING-STATEMENTS: **C.-S.-S.-C.-P.-S.-G.-TITLE-~15: D.-C.-C.-S.-~1692-~E,** of the PENALTY: **C.-S.-S.-C.-P.-S.-G.-TITLE-~15: D.-C.-C.-S.-~78-~ff,** with the $25-MILLION-FINE of the COLLECTION-CASH-COMPENSATION-BENEFIT with the **QUI-TAM-CLAIMANTS: Richard-E.: Russell &: Denese-I.: Russell's**-WITNESSING **&:** PERFORMANCE-WORK-CONSOLIDATION of the CERTIFIED-EVIDENCE **&:** C.-S.-S.-C.-P.-S.-G.-OPERATIONAL-LAWS with the THIRTY-FIVE-PERCENT-CASH-FUNDS-COVERED-NOW-TIME-FACTS of the FINE-PAYMENTS with the SUCCESSFUL-PLAINTIFF'S-EXPENSES of the CORPORATION-CASE with the PLOYMENT-SECURITY of the C.-S.-S.-C.-P.-S.-G.-STATMENTS with the SENIORITY-STATUS, SPECIAL DAMAGES, **&:** DOUBLE-BACK-PAY by the VASSALEES'-EVIDENCE-CONFESSION.

~32 For the **Richard-E.: Russell &: Denese-I.: Russell's**-GOLD-CASH-VALUE-DOCUMENT of this FAULT-CONTRACT-CLAIMS **ARE** with the COMMUNICATIONS-PARSE-SYNTAX-GRAMMAR of the **TITLE-~42: D.-C.-C.-S.-~1986: KNOWLEDGE** with the **C.-S.-S.-C.-P.-S.-G.-WRIT** of the **DOCUMENT-CONTRACT-FAULT-CLAIM-RULE-~55**.

~33 For the **C.-S.-S.-C.-P.-S.-G.-WRIT** of this **POSSESSION ARE** with the **LAND &: BUILDING-SALVAGE-CLAIM: TITLE-~46: D.-C.-C.-S.-~781,** with this C.-S.-S.-C.-P.-S.-G.-ORIGINAL-AUTHORITY-VENUE-CLAIM by the D.-C.-F.-P.-S.-C.-V.-COMMAND

~34 For the WORD-PATTERNS of the WORD-TERMS **ARE** with the DAMAGE-CLAIMS of the 100%-WORD-ERRORS **&:** WRONG-WORD-PARSE-SYNTAX-GRAMMAR-MEANINGS with the SENTENCE-STRUCTURING by the VASSALEES.

For the COPYCLAIM/COPYRIGHT-~4-~MAY-~2015 by the David-Wynn: Miller, FEDERAL-POSTAL-JUDGE, POST-MASTER, of this DOCUMENT-CONTRACT-FEDERAL-POSTAL-STATION-COURT-VENUE **&:** CORPORATION-CASE-REGISTERED-MAIL-NUMBER-**~RA289254645US**.     ~5

~35 For the 'UNITED STATES of the AMERICA-CORPORATION'S-POLICY, CUSTOM &: USAGE of the FRAUD-GRAMMAR-PRACTICE ARE with the DAMAGE-CLAIMS of the VASSALEE'S-'DEED OF TRUST', with the TITLE-~42: D.-C.-C.-S.-~1983, AT the NOTE-~349: POLICY, CUSTOM &: USAGE by the FIDUCIARY-TEACHING-SUPERVISORS with the "UNITED STATES of an AMERICA-CORPORATION-DATE-~2-FEBRUARY-~2000.

~36 For this GOLD-CERTIFICATE or: EQUIVALENT-VALUE ARE with the WAGE-CLAIMS by the Richard-E.: Russell &: Denese-I.: Russell's-KNOWLEDGE of the WRIT of the DOCUMENT-CONTRACT-FAULT-CLAIM with the CASH-DAMAGE-LOSS of the CARETAKER-GUARDIAN-TRUSTEE-WAGES: $629,000.00, &: "CLAYTON-ACT" with the FOUR-TIMES-DOWN-PAYMENT-CASH-CLAIM with the HOUSE &: LAND-LOCATION-~1413-GLENWOOD-LINKS-LANE,-~VIRGINIA-BEACH,-~VIRGINIA-~23464-8696, with the START-TIME-DATE-~14-~OCTOBER-~2011, with the MINIMUM-CARETAKERS-GUARDIAN-TRUSTEES-WAGES with an EVERYDAY-(24-HOUR)~VIRGINIA-STATE-LABOR-RATE of this FILE-STAMP with the TOTAL-MONIES-DUE: Richard-E.: Russell &: Denese-I.: Russell by the VASSALEES'-FINANCIAL-BANK-FRAUD-CONFESSIONS.

~37 For the NOW-TIME-DATE-FILE-STAMP-GOLD-CERTIFICATE-AUTHORIZATION-CLAIMS of the Richard-E.: Russell &: Dense-I.: Russell ARE with the C.-S.-S.-C.-P.-S.-G.-TRANSFER-CLAIM of the LAND &: BUILDING-CASH-VALUE with the LIS-PENDENS-LABOR-WAGE-LIEN-VALUE-LOCATION-~1413-GLENWOOD-LINKS-LANE,-~VIRGINIA-BEACH,-~VIRGINIA-~23464-8696

~38 For the C.-S.-S.-C.-P.-S.-G.-FALSE-CLAIMS-ACT: TITLE-~31: D.-C.-C.-S.-~3729-THROUGH-~3733: PARSE-SYNTAX-GRAMMAR-CORRECTIONS ARE with the FALSE-TAKING: TITLE-~18: D.-C.-C.-S.-~641, of the Richard-E.: Russell &: Denese-I.: Russell's-EQUITY with the DAMAGE-CLAIMS of the VASSALSEE'S-WRITTEN-FRAUDULENT-SYNTAX-GRAMMAR-EVIDENCE with the C.-S.-S.-C.-P.-S.-G.-CORRECTIONS by the FEDERAL-POSTAL-JUDGE: David-Wynn: Miller.

~39 For the QUO-WARRANTO-COMPLAINT &: LIS-PENDENS of the FOURTY-EIGHT-DAYS-GRACE-TIME ARE with the WRIT of the DOCUMENT-CONTRACT-FAULT-CLAIM of the D.-C.-F.-P.-S.-C.-V.-CORPORATION-CASE-NUMBER-~RA286254645US, AGAINST the FICTION-STATE-COURT-DOCKET-NUMBER-~                    .

~40 For the D.-C.-F.-P.-S.-C.-V.-TREATY of the ~VIRGINIA-TERRITORY ARE with the DOCUMENT-CONTRACT-QUO-WARRANTO-COMPLAINT, LIS-PENDENS-DOCUMENT, &: WRIT of the DOCUMENT-CONTRACT-FAULT-CLAIM-CORPORATION-CASE-NUMBER-~RA286254645US.

~41 For the 'WRIT of the DOCUMENT-CONTRACT-FAULT-CLAIM'-~RULE-~55, after the FORTY-EIGHT-DAYS-TIME-GRACE-PERIOD-CORRESPONDENCE ARE with the LIS-PENDENS-DOCUMENT-FILING of the Richard-E.: Russell's &: Denese-I.: Russell's-BONDED-EVIDENCESUMMARY-CORRECTION of the VASSALEES'-FRAUD-SYNTAX-GRAMMAR.

~42 For the Richard-E.: Russell's &: Denese-I.: Russell's-KNOWLEDGE of this GOLD-CERTIFICATE-EQUITY ARE with this CASH-VALUE-CLAIM of the TIME-STAMP-MEASURMENT-VALUE with the TROY-OUNCE-.999-FINE-GOLD-COIN AT the FILE-STAMP-NOW-TIME-DATE-RATE-PER-TROY-OUNCE with the ~CHICAGO-~ILLINOIS-MERCANTILE-GOLD-COMMODITIES-EXCHANGE of this CLAIMS-PAYMENT with the Richard-E.: Russell's &: Denese-I.: Russell's-LAND &: BUILDINGS-LOCATION-~1413-GLENWOOD-LINKS-LANE,-~VIRGINIA-BEACH,-~VIRGINIA-~23464-8696, by the CLAIMANTS'-WAGES.

~43 For the WHISTLEBLOWERS: Richard-E.: Russell &: Denese-I.: Russell of these CONTRACT-FACTS ARE with the DUTY-CLAIM AGAINST the TITLE-~29: D.-C.-C.-S.-~701, with the VASSALEES'-HANDICAPPING-FRAUDULENT-PARSE-SYNTAX-GRAMMAR of the 'DEED OF TRUST'-WRITING-FRAUD-WORD-MEANINGS by the 'DISABILITIES-ACT-VIOLATION-CLAIM with the APARTHEID, BIAS, CONTRACT-TREASON and/or: RAPE by the FORCE or: INTIMIDATION with the FRAUDULENT-GRAMMAR-COURT-OPINIONS by the VASSALEES-EVIDENCE.

~44 For the D.-C.-F.-P.-S.-C.-V.-SUMMARY-PAYMENT-COMMAND of the FRAUDULENT-PARSE-SYNTAX-GRAMMAR-'DEED OF TRUST'-EVIDENCE ARE with the PERJURY, BANK-FRAUD &: MONEY-THEFT by the FRAUDULENT-LANGUAGE with the TITLE-~15: D.-C.-C.-S.-1692-~E, by the FRAUD &: MISLEADING-STATEMENTS &: TITLE-~15: D.-C.-C.-S.-~78-~ff, with the CASH-DAMAGE-CLAIM of the CRIMINAL-PENALTY[$25-MILLION-DOLLARS] with the C.-S.-S.-C.-P.-S.-G.-FALSE-CLAIMS-ACT-SANCTIONS &: VOID-WORD-TERM-CLOSURE of the Richard-E.: Russell &: Denese-I.: Russell's-WAGES &: CASH-CLAIM-DUE: $629,000.00., with the LOSS by the GUARDIANS-TRUSTEES-WAGES-PAYABLE with the C.-S.-S.-C.-P.-S.-G.-WRIT of the DOCUMENT-CONTRACT-FAULT-CLAIM-RULE-~55, against the VASSALEES.

~45 For the BREACH of the REGISTRATION-CORPORATION-CASE-NUMBER-~RA286254645US, ARE with the BREACHES of the TITLE-~29: D.-C.-C.-S.-~701, with the POLICY of an EQUAL-PARSE-SYNTAX-GRAMMAR-DUTY-CONTRACT within the D.-C.-F.-P.-S.-C.-V. with the TITLE-~42: D.-C.-C.-S.-~1986, by the CLAIMANTS'-C.-S.-S.-C.-P.-S.-G.-CORRECTION.

~46 For the FEDERAL-POSTAL-JUDGE'S-AUTOGRAPH on the FEDERAL-POSTAL-STAMP-$1.00, **ARE** with the **THREE-DAY-RESCISSION-ACT-CLAIM: TITLE-~15: D.-C.-C.-S.-~1635-~A**, with an AUTOGRAPH on the FIRST-PAGE-TOP-BACK with the **WRIT** of the **DOCUMENT-CONTRACT-FAULT-CLAIM** with the D.-C.-F.-P.-S.-C.-V.-FILE-STAMP **&:** FORTY-FIVE-DAYS-FEDERAL-MARITIME-POSTAL-VESSEL-TRUST-LAW of the **C.-S.-S.-C.-P.-S.-G-WRIT** of the **DOCUMENT-CONTRACT-SUMMARY-FAULT-CLAIM-RULE-FIFTY-SIX**(56), by this QUO-WARRANTO-COMPLAINT.

~47 For the *"UNITED STATES CORPORATION TREASURY"*-MONEY-WITHDRAW by the VASSALEE'S-FRAUDULENT-'**DEED OF TRUST**" **ARE** with the DAMAGE-CLAIM of the EDUCATION-TRAINING-FAILURE with the **C.-S.-S.-C.-P.-S.-G.**-MONEY-FIDUCIARY-TREASURY-AUTHORIZED-PERSONS by the FRAUDULENT-SERVICER-BANK.

~48 For the **SUPPORTING-TERMS** of the **DOCUMENT-CLAIMS ARE** with the **C.-S.-S.-C.-P.-S.-G.-DOCUMENT-CONTRACT-FEDERAL-POSTAL-STATION-COURT-VENUE-TERMS.**

~0 For the **TITLE-~42: D.-C.-C.-S.-~1986: KNOWLEDGE** of the DOCUMENT-SYNTAX-GRAMMAR-DUTIES **ARE** with the CORRECTION-CLAIM of the WRONG-PARSE-SYNTAX-GRAMMAR with the **C.-S.-S.-C.-P.-S.-G.**-DOCUMENT by the FEDERAL-JUDGE.

~1 For the **D.-C.-C.-~4**: For the VESSEL-PROCESS: ~a with the SUMMONS; ~b with the FORM; **~c:** VASSALEES'-VESSEL-CLAIMS;
**~d:** SUMMONS **&:** COMPLAINT with the **TWENTY-ONE-DAYS-CORRESPONDENCE-BACK** TO the FEDERAL-POSTAL-COURT-CLERK-HEREIN;
**~g:** JOINING-TWO-VESSELS by the D.-C.-F.-P.-S.-C.-V.-CLERK; **~h:** D.-C.-F.-P.-S.-C.-V.-SCHEDULING-45-DAY-TRUST-TIME-LIMIT **&:** THREE-DAY-RESCISSION-TIME-CLAIM: **TITLE-~15: D.-C.-C.-S.-~1635-~A**.

~2 For the **D.-C.-C.-~5** = with the VESSEL: ~a: DUTIES; **~d:** FILING-CLAIMS; **~e:** CLERK'S-OPERATIONAL-FILING-DOCUMENTS **ARE** with the VESSEL-CLAIMS of the PERSON OVER an AGE: 18-YEARS **&: NOT-IN** the MATTER of the CORPORATION-CASE.

~3 For the **D.-C.-C.-~6** = with the TIME: ~a with the COMPUTATION-MONDAY-THROUGH-FRIDAY-CASES **&:** CONTINUANCE with the **D.-C.-F.-P.-S.-C.-V.:** **~d** with the COMPLAINTS **&:** STATEMENTS **ARE** within the VESSEL of the FIVE-DAYS-CLAIMS-NOTICES with the HEARING/TRIAL by the **Richard-E.: Russell &: Denese-I.: Russell &:** ONE-DAY-CORRESPONDENCE by the VASSALEES'-TRIAL.

~4 For the **D.-C.-C.-~7** = ~a: **COMMANDS** IN the **C.-S.-S.-C.-P.-S.-G.;** ~b: C.-S.-S.-C.-P.-S.-G.-COMPLAINT-CLAIMS **ARE** with the **C.-S.-S.-C.-P.-S.-G.**-DAMAGES by the CORRECTION-SOUGHT.

~5 For the **D.-C.-C.-~8** = ~a: **COMMAND-CLAIMS** of the MONEY-COMPENSATION-WAGES, **&: CASH**-VALUE-LAND-**C.-S.-S.-C.-P.-S.-G.**-CORRECTIONS; **~b: C.-S.-S.-C.-P.-S.-G.**-CLAIM; **~c: C.-S.-S.-C.-P.-S.-G.**-OATH;
**~d:** CORRECT-FACT-FAILURE: PERJURY, FRAUD, LIES, FICTION, PRESUMPTIONS, ASSUMPTIONS, OPINIONS, **&:** MODIFICATIONS;
**~e: COMMANDS** by the CLOSURE-WORD-MEANINGS **&:** TERMS of A SINGLE-THOUGHT IN EACH **C.-S.-S.-C.-P.-S.-G.**-FACT-PHRASE, **&:** 'FOR the **ONE-VERB-'THINKING'** IS with the CORRECTION IN EVERY SENTENCE.

~6 For the **D.-C.-C.-~9** =: **SPECIAL-COMMANDS: ~b:** WRITTEN-FRAUDULENT-PARSE-SYNTAX-GRAMMAR **ARE** with the CONDITION, WILL **&:** VOLITION of the MIND; **~e:** FACTUAL-C.-S.-S.-C.-P.-S.-G.-CLAIM; **~f:** NOW-TIME **&:** NOW-PLACE; **~g:** NOW-TIME-FACTS IN the C.-S.-S.-C.-P.-S.-G. **ARE** with the DAMAGE-CLAIMS by the VASSALEES.

~7 For the **D.-C.-C.-~10**: For the **FORM of the COMMAND-CORRECT-FACTS, ~b** with the NUMBERING of the SENTENCES or: PARAGRAPHS **&:** PAGES; **~C** with the BONDING-CORPORATION-CASE, (GLUEING, STITCHING or: MECHANICAL-RIVETTING).

~8 For the **D.-C.-C.-~11: FRIVOLOUS-FILINGS** of the WITNESS'S-PLEADINGS **ARE** with the SANCTION-DAMAGE-CLAIM of the FRAUDULENT-PARSE-SYNTAX-GRAMMAR by the VASSALEE.

~9 For the CAUSE of the **D.-C.-C.-~9-~b,: D.-C.-C.-~12-~b,: D.-C.-C.-~56-~d, &: D.-C.-C.-~7:** CORRECT-DUTIES; **&:** EQUAL-GUARANTEE of the VOID-COURT-COMMUNICATIONS: **TITLE-~42: D.-C.-C.-S.-~1985-~2**, BLOCKING-DAMAGING-CORRECT-FACTS **&:** WITNESSES **&:** FACTUAL-EVIDENCE.

~10 For an AUTOGRAPH of the D.-C.-F.-P.-S.-C.-V.-JUDGE-CORRECTIONS **ARE** with the **C.-S.-S.-C.-P.-S.-G.**-LAW-DOCUMENT of the **FIVE-DAY-TIME-LIMIT** with the SANCTIONS AGAINST the VASSALEES'-EVIDENCE.

~11 For the **DURESS**: For an ILLEGAL-PURPOSE/THREAT of the PERSON'S-COMPLIANCE with the VIOLENCE, PAIN or: FREEDOM-LOSS by the PRISON or MENTAL-HARM or: FINANCIAL-HARM by the COERCING: **TITLE-~28 CHAPTER-~85: D.-C.-C.-S.-~1359.**

~12 For the SUMMARY-CORRECTIONS of the DOCUMENT-CLAIM-LIST: **DOCUMENT-CONTRACT-CLAIM~12-~b:**

~13 For the **D.-C.-C.-~12~-b-~7:** JOINING **ARE** with the **C.-S.-S.-C.-P.-S.-G.**-VENUE by the **D.-C.-F.-P.-S.-C.-V.-CLAIMANTS.**

~14 For the **D.-C.-C.-~12-~b-~6:** NOW-TIME-C.-S.-S.-C.-P.-S.-G.-COMMANDS **ARE** with the C.-S.-S.-C.-P.-S.-G.-FACTUAL-CLAIM-DOCUMENTS.

~15 For the **D.-C.-C.-~12-~b-~5:** CORRECT-CLOSURE-DUTY of the CASE-DOCUMENTS **ARE within** the C.-S.-S.-C.-P.-S.-G.-CERTIFICATION of the **D.-C.-F.-P.-S.-C.-V.-CLERK** with the **C.-S.-S.-C.-P.-S.-G.**-PAPERWORK-CLAIM by the DOCKETING-CORRESPONDENCE-VESSEL.

~16 For the **D.-C.-C.-~12-~b-~4:** CORRECT-VESSEL of the PAPERWORK **ARE** with an AUTOGRAPH-CANCELATION ON the FEDERAL-POSTAL-VESSEL-STAMP **&:** END-DORSEMENT ON the TOP of the COVER-PAGE-BACK **&** ON the DOCKETING-PORT-STAMP.        .~17

For the **D.-C.-C.-~12-~b-~3:** C.-S.-S.-C.-P.-S.-G.-VENUE-FILINGS **ARE** with the C.-S.-S.-C.-P.-S.-G. by the D.-C.-F.-P.-S.-C.-V.

~18 For the **D.-C.-C.-~12-~b-~2:** For the FRAUDULENT-PARSE-SYNTAX-GRAMMAR **of** the VASSALEES **ARE** with the DAMAGE-CLAIM of the C.-S.-S.-C.-P.-S.-G.-PORT-FEDERAL-POSTAL-COURT-VENUE-AUTHORITY by the DOCUMENT-TERMS.

~19 For the **D.-C.-C.-~12-~b-~1:** For the CLAIMANT'S-KNOWLEDGE of the C.-S.-S.-C.-P.-S.-G.-FACTS **ARE** with the CLAIMS of the FACTS with an AUTHORITY-CORPORATION-CASE by the DOCUMENT-TERMS.

~20 For the **TITLE-~18: D.-C.-C.-S.-~1621: PERJURY of an OATH ARE** with DAMAGE-CLAIM of the COERCION: **TITLE-~28: D.-C.-C.-S.-~1359**, with the 'RAPE'(TAKING) of the PERSON'S-FREEDOM with the **TITLE-~18: D.-C.-C.-S.-~4:** PRISON-THREAT by A FICTION-FELONY-PLEADING with the FRAUDULENT-PARSE-SYNTAX-GRAMMAR **&: TITLE-~18: D.-C.-C.-S.-~3**, within the PARTICIPATION by the CRIMINAL-FRAUDULENT-PARSE-SYNTAX-GRAMMAR-DOCUMENTS.

For the COPYCLAIM/COPYRIGHT-~4-~MAY-~2015 by the David-Wynn: Miller, FEDERAL-POSTAL-JUDGE, POST-MASTER, of this DOCUMENT-CONTRACT-FEDERAL-POSTAL-STATION-COURT-VENUE **&:** CORPORATION-CASE-REGISTERED-MAIL-NUMBER-~RA289254645US .        ~7

~21 For the ADJECTIVES, PRONOUNS or: ADVERB-MODIFIERS IN the FRAUDULENT-GRAMMAR-FORMAT ARE with the PERJURY: TITLE-~18: D.-C.-C.-S.-~1621: FALSE-SWEARING of the FIRST-STATEMENT-NOW-TIME.

~22 For the TRAPS IN the TITLES, NAMES, DATES, CASE-NUMBERS, ITALIC-WORDS, BOXING &: TITLE-SITES ARE with the FRAUDULENT-SYNTAX-GRAMMAR-FORMAT by the VASSALEES'-AUTOGRAPH-CONFESSION.

~23 For the POSITIONS: FOR, OF, WITH, BY, THROUGH, IN &: ON ARE with the NOW-TENSE-AUTHORITY-VENUE-POSITION-CLAIMS of the "POSITION-LODIAL-FACT-PHRASE" with the NOW-TIME-AUTHORITY.

~24 For the TITLE-~18: D.-C.-C.-S.-~641, with the TAKING/STEALING of the GOVERNMENT-PAYROLL-WAGE-MONEY ARE with the VOID-PERFORMANCE-JOB-DUTY of the "UNITED STATES CORPORATION-POSTAL-GOVERNMENTS'-FIDUCIARY-SECURITY" of the CLAIMANT with the TITLE-~42: D.-C.-C.-S.-~1986: STOPPING &: CORRECTING by the VASSALEES'-NEGLECT-STANDING WITHOUT the CLEAR &: C.-S.-S.-C.-P.-S.-G.-PAPERWORK-TITLE-CLAIM of the LAND: & BUILDINGS=~1413-GLENWOOD-LINKS-LANE,-~VIRGINIA-BEACH,-~VIRGINIA-~23464-8696, &: 'BOXING-STYLES'=:VOID-SPACE, :WORD-VACATING, ITALIC-STYLES=WORD-VACATING, For the -VASSALEES-FRAUDULENT-PARSE-SYNTAX-GRAMMAR-DOCUMENT-FILINGS: "DEED OF TRUST", AS the FUTURE-TIME-SIMULATION with the "FICTION-SYNTAX-NOTARY"-ONE-PARTY-SIGNING.

~25 For the LEGAL-NECESSARY-ELEMENT of the FEAR ARE with the TORT-CLAIMS by the TITLE-~42: D.-C.-C.-S.-~1985-~3.  (SEE-RICO)

~26 For the RACKETEERING AS the OVER-POWERING-FORCES ARE with the FRAUDULENT-FINANCIAL-CLAIM of the THREAT with the TOTAL-LOSS by the MOVING-PERSON(S) with an ORGANIZATION-CONSPIRACY of the CRIMES with the TORT/COERCION, RAPE or: COERCION of the LIFE, PARTY, PERSON, &: DOCUMENT with an ENGINEERING-DAMAGE by the TORT-PERSONS.

~27 For an ADJECTIVE AS the COLORFUL-OPINION ARE with the MODIFICATION of the FACT, with the TWO-OR-MORE-FACTS-JOINING with the LAST-FACT of the FACT-PHRASE-CHANGING of the FIRST-FACT INTO an ADJECTIVE & with the ADJECTIVE-CHANGES of the SECOND-FACT-WORD INTO the PRONOUN-PARSE-SYNTAX-GRAMMAR.

~28 For the D.-C.-C.-~24: TITLE-~28: D.-C.-C.-S.-~2403: C.-S.-S.-C.-P.-S.-G.-CHALLENGE of the DOCUMENT-FACTS.

~29 For the CHANGING-TREATMENT of the PERSON'S-QUALITY ARE with the DAMAGE-CLAIM of the NEGLECT with the FAVORING--ONE-PERSON by A CONSPIRACY with the SECOND-PERSON. [WITH the TITLE-~VII of THE: 1964: DOCUMENT-CIVIL-RIGHTS-ACT].

~30 For the D.-C.-C.-~38-a: For the TRIAL by the TWELVE-PERSON-JURY ARE with the SAME-ONE-PLANE-CLAIM of the D.-C.-F.-P.-S.-C.-V.

~31 For the D.-C.-C.-~41-~a: VOLUNTARY-WITHDRAW of an ADVERB-VERB-FRAUDULENT-PARSE-SYNTAX-GRAMMAE ARE with the PARSE-SYNTAX-GRAMMAR-ERROR-CLAIM of the TITLE-~42: D.-C.-C.-S.-1986: KNOWLEDGE & CORRECTION by the CLAIMANTS.

~32 For the TITLE-~18: D.-C.-C.-S.-~242-~1,: TWO or: MORE-PERSON-TOGETHER ARE with the VOID-PARSE-SYNTAX-GRAMMAR-CLAIMS of the STATUTE, ORDINANCE, CODES, REGULATION, OR: LAWS with the TWO-DIFFERENT-PUNISHMENTS, PAINS, PENALTIES or: TREATMENT ON an ACCOUNT of the PERSON-BEING-FOREIGN = (NO PUNCTUATION IN the DEAD-NAME) = FRAUD/FOREIGN, or by the PERSON'S-COLOR, RACE, FAITH, or: SEX ARE with the DAMAGE-CLAIMS by an AILING-GUISE-COMMUNICATIONS.

~33 For the TITLE-~18: D.-C.-C.-S.-~1621: For the PERJURY-CONDITION of the PERSON'S-VOLITION ARE with the PAYMENT-WAGE-CLAIM of the FRAUD-PARSE-SYNTAX-GRAMMAR-WRITINGS with the PAYMENT or: WAGES by the CONTRACT-BREACH-AUTHOR.

~34 For the D.-C.-C.-~50: For the NEW-TRIAL of the FRAUD-SYNTAX-GRAMMAR-CASE ARE with the 'WRIT of DE NOVO' by an ORIGINAL-COURT-JUDGE'S-VOID-CORRECTION of the PARSE-SYNTAX-GRAMMAR-FACTS with the C.-S.-S.-C.-P.-S.-G.-QUO-WARRANTO-COMPLAINT.

~35 For the D.-C.-C.-~54: For the CLAIMS of the SUMMARY-DOCUMENT-CONTRACT ARE with the C.-S.-S.-C.-P.-S.-G.-CORRECTIONS by the FEDERAL-POSTAL-JUDGE: David-Wynn: Miller.

~36 For the D.-C.-C.-~56: For the C.-S.-S.-C.-P.-S.-G.-SUMMARY-CORRECTIONS of the EVIDENCE-CONFESSION ARE with the DAMAGES-DICISION-CLAIMS of the FEDERAL-POSTAL-COURT-C.-S.-S.-C.-P.-S.-G.-COMMAND-DICISION.

~37 For the D.-C.-C.-~57: For the WRITTEN-COMMAND-CONTRACT-VENUES of the PHYSICAL-EVIDENCE-DAMAGES ARE with the DAMAGES-CLAIM-PAYMENTS by the C.-S.-S.-C.-P.-S.-G.-CLAIMANTS'-FACTS &: VASSALEES'-BONDED-EVIDENCE-FRAUD.

~38 For the BREACH, of the COMMISSION, OMISSION, DOCUMENT-DUTY, AUTHORITY &:/OR: FIDUCIARY'S-CONTRACT-TERMS ARE with the DAMAGE-CLAIM by the NEGLIGENT-PERSON'S-DOCUMENT-CONTRACT.

~39 For the BIAS: For an OPINION-LEANING-TOWARDS-ONE-SIDE of the MATTER/CAUSE/FACT ARE with the CONVICTION by A WRONG-OPINION.

~40 For the 'TORT' of the DOCUMENT-WRONGS ARE with the CONSPIRACY-CLAIM of the DUTY-CONTRACT, PERSON-CORPORATION or: FRAUDULENT-PARSE-SYNTAX-GRAMMAR-CONSTITUTION by the FIDUCIARY'S-PRACTICE-VOLITION with the WRONGFUL-PARSE-SYNTAX-GRAMMAR of the NOW-TIME-THREAT/FEAR with the DOCUMENT-LAW: TITLE-~18: D.-C.-C.-S.-~871.(:LIE-TOGETHER or: LAY-TOGETHER)

~41. For the PRONOUN-PARSE-SYNTAX-GRAMMAR-VOID: For the PRONOUN of the FICTION-STYLES-SYNTAX-GRAMMAR ARE with the WORD-TERM-CLAIMS as the TRICK, TRAP or: FICTIONAL-VOLITION-COURTROOM-COMMUNICATIONS.

~42 For these VASSALEES-PHYSICAL-EVIDENCE of the QUO-WARRANTO-COMPLAINT ARE with the DAMAGE-CLAIM by the CONSPIRATORS'-EVIDENCE-TRAIL by these VASSALEES.

: Richard-E.: Russell. : *Richard-E.: Russell*. :~1413-GLENWOOD-LINKS-LANE,-~VIRGINIA-BEACH,-~VIRGINIA-~23464-8696

: Denese-I.: Russell. : *Denese-I.: Russell* :1413-GLENWOOD-LINKS-LANE,-~VIRGINIA-BEACH,-~VIRGINIA-~23464-8696

For the COPYCLAIM/COPYRIGHT-~4-~MAY-~2015 by the David-Wynn: Miller, FEDERAL-POSTAL-JUDGE, POST-MASTER, of this DOCUMENT-CONTRACT-FEDERAL-POSTAL-STATION-COURT-VENUE &: CORPORATION-CASE-REGISTERED-MAIL-NUMBER-~RA289254645US .    ~8

For the **DOCUMENT-CONTRACT-FEDERAL-POSTAL-STATION-COURT-VENUE** of this **DOCUMENT-CONTRACT-QUO-WARRANTO-COMPLAINT, LIS-PENDENS-DOCUMENT-WAGE-CLAIMS** &: **FOURTY-EIGHT-DAY-VOID-CORRESPONDENT-VIOLATION ARE** with the **D.-C.-F.-P.-S.-C.-V.-COMMAND** of the '**WRIT** of the **DOCUMENT-CONTRACT-FAULT-CLAIM**' with the FEDERAL-POSTAL-REGISTRATION-CORPORATION-CASE-NUMBER-**~RA286254645US.**

~1 For the **Richard-E.: Russell's** &: **Denese-I.: Russell's**-KNOWLEDGE of the FRAUDULENT-VASSALEES'-COMMUNICATION **ARE** with the DAMAGE-CLAIMS of the TITLE-COMPANY'S-CLOSING-ATTORNEY-KNOWLEDGE &: TRUSTEE'S-KNOWLEDGE of the FRAUDULENT-PARSE-SYNTAX-GRAMMAR with an **ILLUSIONAL-LOAN-AGREEMENT.**

~2 For this QUO-WARRANTO-COMPLAINT &: LIS-PENDENS of the C.-S.-S.-C.-P.-S.-G-CLOSURE-SYNTAX-GRAMMAR-CONTRACT-DUTY **ARE** with the FOURTY-EIGHT-DAYS-GRACE-TIME-CORRESPONDENCE-BACK within the **D.-C.-F.-P.-S.-C.-V.** OR with the '**WRIT** of the **DOCUMENT-CONTRACT-FAULT-CLAIM**' with this FEDERAL-POSTAL-JUDGE'S-VENUE by the CORPORATION-CASE-NUMBER-**~RA286254645US.**

~3 For this DOCUMENT-CONTRACT-FEDERAL-POSTAL-STATION-COURT-VENUE-COMMAND of the C.-S.-S.-C.-P.-S.-G-SUMMARY-WRIT of the **FEDERAL-POSTAL-REGISTRATION-DOCKETING-NUMBER-~RA286254645US** with the **WRIT** of the **FAULT-DOCUMENT-CONTRACT-COMMAND-CLAIM ARE** with the VASSALEE'S-FAILURE of the C.-S.-S.-C.-P.-S.-G-CORRESPONDENCE with the LAND-TITLE-CLAIM-EVIDENCE &: C.-S.-S.-C.-P.-S.-G-'**DEED OF TRUST**' &: TITLE-*IN*SURANCE by the **VASSALEE-TITLE-CLOSING-CORPORATION.**

~4 For the CARETAKERS-GUARDIAN-TRUSTEES-WAGES-CLAIM of the (**$629,000.00,): SIX-HUNDRED-TWENTY-NINE-THOUSAND-DOLLARS ARE** with the COLLECTION-CLAIM of the **EACH-MONTH-COMPOUND-ONE-PERCENT-RATE-FEES** with the UNITED-STATES-TREASURY-CORPORATION-CURRENCY of the C.-S.-S.-C.-P.-S.-G.-PERFORMANCE-CONTRACT with the "UNITED STATES of AMERICA-CORPORATION".

~5 For the SAME-FLAG-VENUE-CLAIM &: TITLE-CLAIM of the POSSESSIVE-PERFORMANCE-DUTIES with these CURRENT-LIVE-LIFE: **Richard-E.: Russell** &: **Denese-I.: Russell** of this QUO-WARRANTO-COMPLAINT &: **C.-S.-S.-C.-P.-S.-G-WRIT** of the **DOCUMENT-CONTRACT-FAULT-CLAIM** with this **WRIT** of the **POSSESSION-COMMAND** by this **D.-C.-F.-P.-S.-C.-V.** For the **Richard-E.: Russell** &: **Denese-I.: Russell's-LAND** &: **BUILDINGS-LOCATION-~1413-GLENWOOD-LINKS-LANE,-~VIRGINIA-BEACH,-~VIRGINIA-~23464-8696,** by the FEDERAL-POSTAL-JUDGE: David-Wynn: Miller's-COMMANDS.

~6 For the FEDERAL-POSTAL-JUDGE: David-Wynn: Miller's-KNOWLEDGE of this COMMAND-CORRECTION-AUTHORITY **ARE** with the TIPSTAFFING-DUTY-AUTHORITY of the MARSHALL-SERVICE, SHERIFF-SERVICE, POSTAL-SPECTOR-SERVICE, FEDERAL-BEURAU of an *in*VESTIGATION-SERVICE, SECURITIES &: *ex*-CHANGE &: LOCAL-STATE-POLICE SERVICE with the C.-S.-S.-C.-P.-S.-G.-PERFORMANCE-FORCE of the TIPSTAFFING-FIDUCIARY with this COMMAND by this FEDERAL-POSTAL-JUDGE: David-Wynn: Miller.

~7 For this **QUO-WARRANTO-COMPLAINT** &: **LIS-PENDENS** of the **FOURTY-EIGHT-DAYS-GRACE-TIME ARE** with the DAMAGE-CLAIM of the **WRIT** of the **DOCUMENT-CONTRACT-FAULT-CLAIM** by this **FEDERAL-POSTAL-CORPORATION-CASE-NUMBER-~RA286254645US.**

~8 For the POSTAL-SERVICE-GOVERNMENT-PLOYEES of this TIPSTAFF-OATH-DUTY **ARE** with the **C.-S.-S.-C.-P.-S.-G.-OATH** &: PUBLIC-DUTY-SECURITY-DOCUMENT-CONTRACT or with the VOID-AUTHORITY as the CRIMINAL-ACTOR with the **FRAUDULENT-PARSE-SYNTAX-GRAMMAR-OPINION-OATH** by the FRAUDULENT-POLICY &: CUSTOM-GUISE.

: FEDERAL-POSTAL-JUDGE: David-Wynn: Miller. : *David-Wynn: Miller.*   :seal:
[~5166-NORTH-~63rd-STREET,-~MILWAUKEE,-~WISCONSIN-~53218]   *4 n May- 2015.*

:CC: For the '**LAW of the UNITED-STATES-FLAG**' **ARE** with the JOINING-DUTIES of the GOVERNMENT-AGENCIES'-*EMPLOYEES*: "WHISTLEBLOWER" FORM-95: &: ROGATORY-LETTER.   : FEDERAL-DEPARTMENT of the JUSTICE,-~950-Pennsylvania-Avenue,-~NW,   -~Washington-DC,-~20530-0001, "WHISTLEBLOWER" FORM-95, &: ROGATORY-LETTER. :CONSUMER-FINANCIAL-PROTECTION-BUREAU,-~P.O.-Box-4503,-~IOWA-CITY,-~IOWA, ~52244, "WHISTLEBLOWER" FORM-95, &: ROGATORY-LETTER.   : POSTAL-*IN*SPECTOR: CRIMINAL *IN*VESTIGATIONS SERVICE CENTER, WHISTLEBLOWER, FORM-95, &: ROGATORY-LETTER. Attention: POSTAL-MAIL FRAUD-~433-~WEST-~HARRISON-STREET,-~ROOM-~3255,-~CHICAGO,-~IL,-~60699-3255, :SENATE-OVERSIGHT-COMMITTEE on the GOVERNMENT-CORRECT-FORM,-~2157-RAYBURN-HOUSE-OFFICE-BUILDING,-~WASHINGTON-DC.-~20515.   :ROGATORY-LETTER. :SECURITIES AND EXCHANGE-OFFICE, "WHISTLEBLOWER",-~100-~F~STREET,-~NE,-~MAIL-STOP,-~5971, ~WASHINGTON-D.C.-~20549, FORM-SEC-TCR.   :WHISTLE-BLOWER-HOTLINE-~866-963-5672. FOR THE CORRESPONDENCE-COPY to the STATE-COURT OR: COUNTY-COURT with the ROGATORY-LETTER &: FORECLOSURE-LAWFIRM.

For the COPYCLAIM/COPYRIGHT-~4-~MAY-~2015 by the David-Wynn: Miller, FEDERAL-POSTAL-JUDGE, POST-MASTER, of this DOCUMENT-CONTRACT-FEDERAL-POSTAL-STATION-COURT-VENUE &: CORPORATION-CASE-REGISTERED-MAIL-NUMBER-~RA289254645US.   ~9

:EVIDENCE-STYLES-SYNTAX-GRAMMAR-WORD-CODES: 0=Noun, 1=Adverb, 2=Verb, 3=Adjective,
4=Pronoun, 5=Position, 6=Lodial, 7=Fact, 8=Past-time, 9=Future-time, DPV=Dangling-Participle-Verb, :PARSE-WORD-
MEANING; NO=No-Contract-Word(First-Vowel +Two-Consonants)

no - 4

# DEED OF TRUST

**DEFINITIONS:**
Words used in multiple sections of this document are defined below and other words are defined in sections 3, 11, 13, 20, and 21
certain rules regarding the usage of the words used in this document are also provided in section 16.

(A) "Security instrument" means this document, which is dated ~14-~OCTOBER-~2011.
together with a riders to this document.

(B) "Borrower" is RICHARD E. RUSSELL & DENESE I. RUSSELL

:BORROWERS ADDRESS- ~1413-GLENWOOD-LINKS-LANE,-~VIRGINIA-BEACH,-~VIRGINIA-~23464

(C) "LENDER" IS CITIBANK, N.A., CORPORATION

LENDERS ADDRESS- ~1000-TECHNOLOGY-DRIVE,-~O'FALLON,-~MISSOURI-~63368-2240

(D) TRUSTEE IS: GLASSER & GLASSER P.L.C.

TRUSTEE ADDRESS-~ 580-EAST-MAIN-STREET,-~SUITE-~600,-~NORFORK,-~VIRGINIA-~23510.

MERS WAS VACATED BY THE ATTORNEY-GENERAL 6-NOVEMBER-~2010; NEVER TOOK MONEY; NEVER-PAID-MONEY, NEVER-SIGNED-CONTRACTS

(E) "NOTE" Means the promissory note signed by borrower and dated-~14-~OCTOBER-~2011.
THE NOTE STATES THE BORROWER OWES LENDER- **NO=no, TE=contract** (PARSE-WORD-MEANING)
plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than

(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the
Note, and all sums due under this Security Instrument, plus interest. DPV

(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to
be executed by Borrower [check box as applicable]:

- [ ] Adjustable Rate Rider
- [ ] Condominium Rider
- [ ] Second Home Rider
- [ ] Balloon Rider
- [X] Planned Unit Development Rider
- [ ] Biweekly Payment Rider
- [ ] 1-4 Family Rider
- [ ] Revocable Trust Rider
- [X] VA RIDER
- [X] Other

[parse: no=no, te=contract] =100%-fraud-syntax

(I) "Applicable Law" means all controlling applicable federal, state and local, statutes, regulations, ordinances and
administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that
are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or
similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape
so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited
to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and
automated clearinghouse transfers.

(L) "Escrow Items" means those items that are described in Section 3.

(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third
party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of,
the Property, (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or
(iv) misrepresentations of, or omissions as to, the value and/or condition of the Property. DPV

(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus
(ii) any amounts under Section 3 of this Security Instrument.

(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing
regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor
legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all
requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not
qualify as a "federally related mortgage loan" under RESPA. DPV

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party
has assumed Borrower's obligations under the Note and/or this Security Instrument.

PARSE: "NOTE" = NO=NO,
TE=CONTRACT.

:pages~1 & ~2
{consolidating-paper-saving}

:Styles-Parse-Syntax-Grammar-Word-Numbering-Keys-Meanings: 1=Adverb, 2=Verb, 3=Adjective, 4=Pronoun, 5=Position, 6=Nodial, 7=Fact, 8=Past-time-tense, 9=Future-Time-Tense, 0=Conjunction(and/or), DPV=Dangling Participle-Verb, [Bracket=void], (parentheses=omit), ITALICISE=OMIT. "quotation-marks-OMIT-words":EVERY WORD-STARTING-VOWELS: A,E,I,O,U, AND: FOLLOWING-TWO-CONSONANTS=MEANS: NO-CONTRACT-WORD-MEANING. FOR THE NUMBERS OF THE SYNTAX-MEANING ARE WITH THE SPACE-SAVER-CLAIM OF THE CORRECT-WORD-TERM-MEANING.

conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the COUNTY OF **VIRGINIA-BEACH.**

[Type of Recording Jurisdiction]          [Name of Recording Jurisdiction]

**SEE THE LEGAL-LAND**

Parcel ID Number:                which currently has the address of

**1413-GLENWOOD-LINKS-LANE,-~VIRGINIA-BEACH,-~VIRGINIA-~23464-8696.**

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including,

PAGE~3

FOR THE CORRECT-SYNTAX-WORD-TERM-KEY-MEANINGS IS WITH THESE NUMBERS ON THE WORDS WITH THE
SPACE-SAVING-ABBREVIATIONS : ~0=CONJUNCTION (AND/OR) ~1=ADVERB , ~2=VERB , ~3=ADJECTIVE , ~4=PRONOUN ,
5~POSITION ~6=LODIAL ~7=FACT , ~8=PAST-TIME , ~9=FUTURE-TIME , -DPV=DANGLING-PARTICIPLE-VERB :
:FIRST-VOWELS:A,E,I,O,U WITH THE FOLLOWING-TWO-CONSONANTS=NO-CONTRACT-WORD-MEANING.

of record. Borrower warrants and will defend generally the title to the Property against all claims and
demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform
covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real
property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.
Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any
prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items
pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.
currency. However, if any check or other instrument received by Lender as payment under the Note or this
Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments
due under the Note and this Security Instrument be made in one or more of the following forms, as
selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or
cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a
federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at
such other location as may be designated by Lender in accordance with the notice provisions in Section 15.
Lender may return any payment or partial payment if the payment or partial payments are insufficient to
bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan
current, without waiver of any rights hereunder, or prejudice to its rights to refuse such payment or partial
payments in the future, but Lender is not obligated to apply such payments at the time such payments are
accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay
interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring
the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply
such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding
principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower
might have now or in the future against Lender shall relieve Borrower from making payments due under
the Note and this Security Instrument or performing the covenants and agreements secured by this Security
Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section all
payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest
due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments
shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts
shall be applied first to late charges, second to any other amounts due under this Security Instrument, and
then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a
sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and
the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received
from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be
paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or
more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall
be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under
the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due
under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due
for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a
lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c)
premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance
premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage
Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow
Items." At origination or at any time during the term of the Loan, Lender may require that Community
Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and
assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to
be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives
Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's
obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

PAGE~4

FOR THE CORRECT-SYNTAX-WORD-TERM-KEY-MEANINGS IS WITH THESE NUMBERS ON THE WORDS WITH THE
SPACE-SAVING-ABBREVIATIONS: ~0=CONJUNCTION (AND/OR) ~1=ADVERB ,~2=VERB ,~3=ADJECTIVE ,~4=PRONOUN ,~
5-POSITION-~6=LODIAL-~7=FACT ,~8=PAST-TIME ,~9=FUTURE-TIME ,~DPV=DANGLING-PARTICIPLE-VERB ;
:FIRST-VOWELS:A,E,I,O,U WITH THE FOLLOWING-TWO-CONSONANTS=NO-CONTRACT.

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts
due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires,
shall furnish to Lender receipts evidencing such payment within such time period as Lender may require.
Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to
be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement"
is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and
Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9
and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such
amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in
accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in
such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply
the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can
require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and
reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable
Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency,
instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in
any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time
specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually
analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the
Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing
or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower
any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest
shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the
Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to
Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow,
as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to
Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12
monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall
notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make
up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund
to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions
attributable to the Property which can attain priority over this Security Instrument, leasehold payments or
ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To
the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless
Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable
to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith
by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to
prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings
are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating
the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien
which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

PAGE~5

:Syntax-word-key-meaning:
| 1=Adverb | 8=Past-time |
| 2=Verb | 9=Future-time |
| 3=Adjective | 0=Conjunction |
| 4=Pronoun | NC=No-Contract |

FOR THE CORRECT-SYNTAX-WORD-TERM-KEY-MEANINGS IS WITH THESE NUMBERS ON THE WORDS WITH THE
SPACE-SAVING-ABBREVIATIONS: ~0=CONJUNCTION (AND/OR) ~1=ADVERB, ~2=VERB, ~3=ADJECTIVE, ~4=PRONOUN,
~5-POSITION~—6=LODIAL~—7=FACT, ~8=PAST-TIME ~9=FUTURE-TIME, ~DPV=DANGLING-PARTICIPLE-VERB;
:FIRST-VOWELS: A, E, I, O, U WITH THE FOLLOWING-TWO-CONSONANTS=NO-CONTRACT-WORD-MEANING.

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one of more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies, shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

Page 6

:Syntax-word-key-meaning:
1=Adverb        8=Past-time
2=Verb          9=Future-time
3=Adjective     0=Conjunction
4=Pronoun       NC=No-Contract

6

FOR THE CORRECT-SYNTAX-WORD-TERM-KEY-MEANINGS IS WITH THESE NUMBERS ON THE WORDS WITH THE
SPACE-SAVING-ABBREVIATIONS: ~0=CONJUNCTION (AND/OR) ~1=ADVERB ~2=VERB, ~3=ADJECTIVE, ~4=PRONOUN,~
5=POSITION-~6=LODIAL-~7=FACT, ~8=PAST-TIME, ~9=FUTURE-TIME, ~DPV=DANGLING-PARTICIPLE-VERB;
;FIRST-VOWELS:A,E,I,O,U WITH THE FOLLOWING-TWO-CONSONANTS=NO-CONTRACT-WORD-MEANING.

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

Page 7

:Syntax-word-key-meaning:
1=Adverb        8=Past-time
2=Verb          9=Future-time
3=Adjective     0=Conjunction
4=Pronoun       NC=No-Contract

FOR THE CORRECT-SYNTAX-WORD-TERM-KEY-MEANINGS IS WITH THESE NUMBERS ON THE WORDS WITH THE
SPACE-SAVING-ABBREVIATIONS: ~0=CONJUNCTION (AND/OR) ~1=ADVERB ~2=VERB, ~3=ADJECTIVE, ~4=PRONOUN,
~5=POSITION~~6=LODIAL~~7=FACT, ~8=PAST-TIME, ~9=FUTURE-TIME, ~DPV=DANGLING-PARTICIPLE-VERB;
:FIRST-VOWELS:A,E,I,O,U WITH THE FOLLOWING-TWO-CONSONANTS=NO-CONTRACT-WORD-MEANING.

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

:Syntax-word-key-meaning:

| | |
|---|---|
| 1=Adverb | 8=Past-time |
| 2=Verb | 9=Future-time |
| 3=Adjective | 0=Conjunction |
| 4=Pronoun | NC=No-Contract |

FOR THE CORRECT-SYNTAX-WORD-TERM-KEY-MEANINGS IS WITH THESE NUMBERS ON THE WORDS WITH THE SPACE-SAVING-ABBREVIATIONS: ~0=CONJUNCTION (AND/OR) ~1=ADVERB, ~2=VERB, ~3=ADJECTIVE, ~4=PRONOUN, ~5=POSITION ~6=LODIAL ~7=FACT, ~8=PAST-TIME, ~9=FUTURE-TIME, ~DPV=DANGLING-PARTICIPLE-VERB; ;FIRST-VOWELS: A, E, I, O, U WITH THE FOLLOWING-TWO-CONSONANTS=NO-CONTRACT-WORD-MEANING.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments, as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

:Syntax-word-key-meaning:
1=Adverb        8=Past-time
2=Verb          9=Future-time
3=Adjective     0=Conjunction
4=Pronoun       NC=No-Contract

9

FOR THE CORRECT-SYNTAX-WORD-TERM-KEY-MEANINGS IS WITH THESE NUMBERS ON THE WORDS WITH THE
SPACE-SAVING-ABBREVIATIONS: ~0=CONJUNCTION (AND/OR) ~1=ADVERB, ~2=VERB, ~3=ADJECTIVE, ~4=PRONOUN,
~5=POSITION-~6=LODIAL-~7=FACT, ~8=PAST-TIME, ~9=FUTURE-TIME, ~DPV=DANGLING-PARTICIPLE-VERB,
:FIRST-VOWELS:A,E,I,O,U WITH THE FOLLOWING-TWO-CONSONANTS=NO-CONTRACT-WORD-MEANING.

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities, or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

PAGE~10

:Syntax-word-key-meaning:
1=Adverb            8=Past-time
2=Verb              9=Future-time
3=Adjective         0=Conjunction
4=Pronoun           NG=No-Contract

/0

FOR THE CORRECT-SYNTAX-WORD-TERM-KEY-MEANINGS IS WITH THESE NUMBERS ON THE WORDS WITH THE
SPACE-SAVING-ABBREVIATIONS: ~0=CONJUNCTION(AND/OR)~1=ADVERB,~2=VERB,~3=ADJECTIVE,~4=PRONOUN;
~5-POSITION~6=LODIAL~7=FACT,~8=PAST-TIME,~9=FUTURE-TIME,~DPV=DANGLING-PARTICIPLE-VERB;
:FIRST-VOWELS:A,E,I,O,U WITH THE FOLLOWING-TWO-CONSONANTS=NO-CONTRACT-WORD-MEANING.

16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law, and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

18. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

PAGE~11

:Syntax-word-key-meaning:
| | |
|---|---|
| 1=Adverb | 8=Past-time |
| 2=Verb | 9=Future-time |
| 3=Adjective | 0=Conjunction |
| 4=Pronoun | NC=No-Contract |

FOR THE CORRECT~SYNTAX~WORD~TERM~KEY~MEANINGS IS WITH THESE NUMBERS ON THE WORDS WITH THE SPACE~SAVING~ABBREVIATIONS: ~0=CONJUNCTION(AND/OR)~1=ADVERB~,~2=VERB,~3=ADJECTIVE,~4=PRONOUN, ~5~POSITION~6=LODIAL~~7=FACT,~8=PAST~TIME,~9=FUTURE~TIME,~DPV=DANGLING~PARTICIPLE~VERB; :FIRST~VOWELS:A,E,I,O,U WITH THE FOLLOWING~TWO~CONSONANTS=NO~CONTRACT~WORD~MEANING.

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

PAGE~12

:Syntax~word~key~meaning:
| | |
|---|---|
| 1=Adverb | 8=Past-time |
| 2=Verb | 9=Future-time |
| 3=Adjective | 0=Conjunction |
| 4=Pronoun | NC=No-Contract |

12

FOR THE CORRECT-SYNTAX-WORD-TERMINOLOGY-&-MEANINGS PLACE THE NUMBERS ON THE WORDS WITH THE SPACE-SAVING-ABBREVIATIONS:~0=CONJUNCTION (AND/OR),~1=ADVERB,~2=VERB,~3=ADJECTIVE,~4=PRONOUN,~ 5=POSITION,~6=LODIAL,~7=FACT,~8=PAST-TIME,~9=FUTURE-TIME,~DPV=DANGLING-PARTICIPLE-VERB; ~FIRST-VOWELS:A,E,I,O,U WITH THE FOLLOWING-TWO-CONSONANTS=NO-CONTRACT-WORD-MEANING.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

Form 3005
:Syntax-word-key-meaning:
1=Adverb        8=Past-time
2=Verb          9=Future-time
3=Adjective     0=Conjunction
4=Pronoun       NC=No-Contract